**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No. 97-50657
_____

MARIA LUISA RAMIREZ,

Plaintiff-Appellee,

versus

THE HOUSING AUTHORITY OF
THE CITY OF EL PASO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Texas
(EP-96-CV-543)
_____

August 31, 1998

Before GARWOOD, JONES, and WIENER, Circuit Judges.

PER CURIAM[*]:

Defendant-Appellant The Housing Authority of the City of El
Paso ("the Housing Authority") appeals the district court's adverse
conclusions of law, entered following a bench trial on Plaintiff-
Appellee Maria Luisa Ramirez's claim under 42 U.S.C. § 1983.
Ramirez brought suit after the Housing Authority terminated her
federal rental assistance, which she had been receiving under
Section 8 of the United States Housing Act of 1937, as amended by
the Housing and Community Development Act of 1974 ("the Housing

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Act").[2]  She sought declaratory and injunctive relief, alleging that the Housing Authority had violated her civil rights when it failed to comply with Department of Housing and Urban Development ("HUD") regulations governing benefits termination procedures, thereby implicating § 1983.

The district court concluded as a matter of law that (1) Ramirez had asserted a viable claim under § 1983, as the HUD regulations at issue create federal rights in favor of section 8 participants, and (2) the Housing Authority violated those rights. We reverse the district court on its second conclusion, determining, as a matter of law, that the Housing Authority complied with HUD's procedural regulations in terminating Ramirez's benefits.  For purposes of our resolution of this appeal, we assume — but do not hold — that those regulations create federal rights enforceable by tenants participating in the section 8 Housing Voucher Program ("the Program").

I

FACTS AND PROCEEDINGS

Ramirez began participating in the Program in September 1994. The Program was created by Congress "[f]or the purpose of aiding lower-income families in obtaining a decent place to live and . . . promoting economically mixed housing[.]"[3]  HUD, through public housing agencies ("PHAs"), which are not federal agencies, provides

---

[2] 42 U.S.C. § 1437f (1994).

[3] 42 U.S.C. § 1437f(a).

2

rent subsidies for eligible participants.[4]  PHAs review proposed leases between private landlords and participants to ensure that rental rates and other aspects of the landlord-tenant relationship comply with federal regulations.  If a PHA finds such compliance, it then enters into a "Housing Assistance Payments Contract" with the landlord and agrees to subsidize the rent in an amount based on the applicant's income.[5]  As the local PHA, the Housing Authority had processed Ramirez's application for federal housing assistance and thereafter oversaw her participation in the Program.

By virtue of her participation, Ramirez agreed to use her rental unit solely as a residence for her family.  The Assisted Lease Agreement provides, in pertinent part: "Tenant agrees not to . . . give accommodation to boarders or lodgers without written consent of the Landlord and the El Paso Housing Authority . . . . This provision does not apply to reasonable accommodation of Tenants' guests or visitors whose stay is less than thirty (30) days."  In October 1996, a complaint was filed with the Housing Authority alleging that Ramirez was accommodating an unauthorized dweller without its knowledge or permission.

On November 5, following an investigation, the Housing Authority notified Ramirez of its decision to terminate her rental assistance.  She was informed, in a letter written in English, that the termination decision was based on her "[a]llowing persons not in family composition to live with [her]" in violation of section

[4]42 U.S.C. § 1437f(b)(1).

[5]42 U.S.C. § 1437a(a).

3

4-A(4) of her Housing Voucher.  The notice letter also apprised Ramirez of her right to request an informal hearing within ten days, and of her rights at that hearing.[6]

Ramirez requested an informal hearing, which was held on November 25.  The hearing officer was Rebecca Murillo, a Housing Authority employee in the Management Section.  Murillo had not participated in the rental assistance termination decision under review, and, as an employee in the Management Section, she did not report to anyone in the Section 8 Eligibility Section.  At the hearing, a brief explanation of the proceedings and of Ramirez's rights with regard to the hearing was presented, in accordance with the Housing Authority's Section 8 Administrative Plan.  Prior to the hearing, Ramirez had been told orally, in Spanish, that she could bring witnesses, and at the hearing she was given an opportunity to present witnesses and evidence.  She was also given the opportunity to ask questions of the Housing Authority's witnesses, all of whom she knew.

---

[6]Including:

1.   Before the hearing, to examine and copy, (AT YOUR EXPENSE), all documents, records, regulations of [the Housing Authority] relevant to the proposed eviction[;]
2.   To have an impartial hearing officer who will hear your case[;]
3.   To be represented by a lawyer or person of your choice.  Residents should notify [the Housing Authority] if he/she will have legal representation[;]
4.   To present evidence and arguments in your favor[;]
5.   To confront and cross examine adverse witnesses[; and]
6.   To controvert or deny evidence relied upon by [the Housing Authority].

4

On November 26, Murillo issued a Notification of Decision by Hearing Officer, stating that the reason for her decision to affirm the termination of Ramirez's rental assistance was that the "[d]welling unit is not used solely by the residents of the Ramirez family." The Housing Authority stopped making subsidy payments to Ramirez's landlord who, sometime thereafter, brought an eviction suit against her in state court for nonpayment of rent.

While the eviction proceeding was pending, Ramirez filed the instant suit against the Housing Authority, seeking declaratory and injunctive relief aimed at reinstating her section 8 benefits. In her section 1983 claim, Ramirez contended that the Housing Authority had violated her federal rights as a section 8 participant by failing to comply with HUD regulations governing benefits termination procedures. The Housing Authority filed a motion to dismiss and a motion for summary judgment, asserting that Ramirez had failed to state a cause of action. The district court denied the motions. The Housing Authority then filed an amended motion for summary judgment claiming that Ramirez had no standing to sue and that no evidence existed of non-compliance with the pertinent federal regulations. After this motion was denied, the case was tried to the court. In July 1997, the court entered findings of fact and conclusions of law favorable to Ramirez; no separate judgment was entered. The Housing Authority timely appealed.

II

ANALYSIS

"We review a district court's factual findings for clear error and its conclusions of law de novo."[7]

Relying on the Supreme Court case of Wright v. City of Roanoke Redev. and Hous. Auth.,[8] Ramirez predicated her § 1983 claim on the Housing Authority's putative violations of HUD regulations governing the termination of housing benefits. Specifically, she alleged violations of 24 C.F.R. §§ 982.555(c)(2) & (e)(6)[9] ("subsections (c)(2) and (e)(6)", respectively). If, under subsection (c)(2), a PHA should decide to terminate assistance because of a participant family's "action or failure to act,"[10] "the [PHA] must give the family prompt written notice that the family may request a hearing."[11]  The notice must:

> (i) Contain a brief statement of reasons for the decision,
> (ii) State that if the family does not agree with the decision, the family may request an informal hearing on the decision, and

---

[7]Weir v. Federal Asset Disposition Ass'n, 123 F.3d 281, 285 (citing Reeves v. AcroMed Corp., 103 F.3d 442, 445 (5th Cir.1997) (citations omitted)).

[8]479 U.S. 418, 430-32, 107 S.Ct. 766, 773-74, 93 L.Ed.2d 781 (1987) (holding that the Housing Act mandate, embodied in the Brooke Amendment, limiting rent for low-income housing to 30% of a tenant's income, in conjunction with HUD regulations providing that "reasonable utilities" costs were included in the rental figure, created right under section 1983 to be charged no more than a "reasonable" amount for utilities).

[9]24 C.F.R. §§ 982.555(c)(2) & (e)(6) (1996).

[10]§ 982.555(a)(1)(v) (referencing § 982.552).

[11]§ 982.555(c)(2).

6

(iii) State the deadline for the family to request an informal hearing.[12]

Ramirez alleged that the Housing Authority's statement of reasons in its notice of decision to terminate rental assistance was insufficient under subsection (c)(2)(i).

With regard to informal hearings requested pursuant to subsection (c)(2)(ii), subsection (e) provides that

[t]he family must be given the opportunity to examine before the [Housing Authority] hearing any [Housing Authority] documents that are directly relevant to the hearing. The family must be allowed to copy any such document at the family's expense. If the [Housing Authority] does not make the document available for examination on request of the family, the [Housing Authority] may not rely on the document at the hearing.[13]

The hearing may be conducted by any person designated by the Housing Authority "other than a person who made or approved the decision under review or a subordinate of this person."[14] "The [Housing Authority] and the family must be given the opportunity to present evidence, and may question any witnesses."[15] Finally, under subsection (e)(6), "[t]he person who conducts the hearing must issue a written decision, stating briefly the reasons for the decision."[16] Ramirez alleged that the statement of reasons contained in Murillo's termination decision was insufficient under subsection (e)(6).

---

[12]Id.

[13]§ 982.555(e)(2)(i).

[14]§ 982.555(e)(4).

[15]§ 982.555(e)(5).

[16]§ 982.555(e)(6).

The district court agreed that the Housing Authority had violated subsections (c)(2) and (e)(6) in terminating Ramirez's benefits, concluding that (1) the notice of termination was inadequate as it failed to inform Ramirez of the allegations against her with enough specificity to enable her to prepare a sufficient defense, and (2) the decision issued by the hearing officer was a mere conclusion.[17] The Housing Authority challenges these conclusions of law on appeal, arguing that (1) Ramirez has not asserted a viable § 1983 claim, as federal regulations alone are an insufficient basis from which to infer enforceable federal rights,[18] and (2) the Housing Authority complied with the HUD

---

[17]The court stated that a final decision requires more than a mere conclusion, relying on HUD comments to another provision regarding final decisions:

> The statement of decision required by the regulation must be truly informative as to the reason for the decision. This would include a short statement of the elements of fact or law on which the decision is actually based. A bare and conclusory statement of the hearing decision which does not let the participant know the reasons for the decision will not satisfy the regulatory requirement.

49 Fed. Reg. 12230 (March 29, 1984).

[18]The Authority submits that rights created by regulation alone probably cannot form the basis for a section 1983 action, citing Wright, 479 U.S. at 438 (O'Connor, J., dissenting) (expressing concern that "lurking behind the Court's analysis may be the view that, once it has been found that a statute creates some enforceable right, any regulation adopted within the purview of the statute creates rights enforceable in federal courts, regardless of whether Congress or the promulgating agency ever contemplated such a result."); Suter v. Artist M., 503 U.S. 347, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992); Gracia v. Brownsville Housing, 105 F.3d 1053, 1057 (5th Cir.) (stating that "it is not clear that regulations can be considered 'laws' for purposes of creating a right actionable under section 1983")(citations omitted), cert. denied, 118 S. Ct. 171, 139 L. Ed. 2d 114 (1997); Ritter v. Cecil County Office of Housing and Community Dev., 33 F.3d 323, 327 n.3 (4th Cir.

regulations at issue. We choose not to address the viability of Ramirez's § 1983 claim as we are convinced that the Housing Authority did not violate subsections (c)(2) and (e)(6) and that the district court erred in concluding as a matter of law that such violations occurred.

As an initial observation, we note that the district court appears to have framed the compliance issue in terms of procedural due process. It prefaces its analysis of subsections (c)(2) and (e)(6) by noting that "federal regulations must comply with the requirements set forth by the Supreme Court in Goldberg v. Kelly."[19] In Goldberg, the Supreme Court held that the Due Process Clause of the Fourteenth Amendment requires that a welfare recipient be afforded an evidentiary hearing prior to the termination of benefits.[20] By measuring the Housing Authority's compliance with the HUD regulations at issue in reference to the strictures of Goldberg and its progeny, the district court actually engaged in a constitutional analysis of Ramirez's benefits termination.[21]

---

1994)(stating that "[r]ights created by regulation alone, if rights can be so created, probably cannot form the basis for a § 1983 action.") (citing Wright, 479 U.S. 437-38) (O'Connor, J., dissenting)).

[19]397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), citing 55 Fed.Reg. 133 at 28, 541 (July 11, 1990) ("PHAs must adopt written informal pretermination hearing procedures for participants, which fully meet the requirements of Goldberg v. Kelly.").

[20]Id. at 264-265.

[21]For instance, the district court cites Escalera v. New York City Hous. Auth., 425 F.2d 853, 862 (2d Cir.), cert. denied, 400 U.S. 853, 91 S. Ct. 54, 27 L. Ed. 2d 91 (1970)) —— in support of its conclusion that the notice of termination was inadequate under

9

Although HUD undoubtedly intended to codify <u>Goldberg</u> in promulgating subsections (c)(2) and (e)(6), those regulatory provisions and the Due Process Clause are not coextensive: PHA procedures that comply with federal regulations may nonetheless violate the Due Process Clause <u>as</u> <u>applied</u>.

In recognition of the constitutional lens through which the district court analyzed Ramirez's claim, the Housing Authority argues that its compliance with subsections (c)(2) and (e)(6) is the only question before the court. In arguing for an affirmative answer to that question, the Housing Authority supports its compliance by observing that its notice of decision comports with subsection (c)(2), as: (1) it is in writing; (2) it contains a brief statement of the reasons for the decision; (3) it states that if the family does not agree with the decision, an informal hearing may be requested; and (4) it specifies a deadline by which an informal hearing may be requested. The Housing Authority disputes the district court's assessment of subsection (c)(2)(i) as requiring termination notices to "specifically inform" tenants of the allegations against them, arguing that the regulation simply

---

subsection (c)(2) — for the proposition that "[a] tenant must be given notice so that '[he] is adequately informed of the nature of the evidence against him so that he can effectively rebut that evidence.'" The PHA procedures at issue in <u>Escalera</u>, however, were challenged on constitutional grounds, as violations of the Due Process Clause rather than of federal regulations. <u>See</u> <u>id.</u> at 861 ("Although the termination of tenancy procedures afforded by the [PHA] in this case admittedly satisfy the requirements of the [HUD] circular of February 7, 1967, considered by the Supreme Court in <u>Thorpe v. Housing Authority of City of Durham</u>, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969), this is not dispositive of the question of whether the procedures satisfy the due process requirements of the Fourteenth Amendment.").

10

requires "a brief statement of the reasons for the decision," which was provided when the Housing Authority informed Ramirez that her benefits were being terminated because she was "[a]llowing persons not in the family composition to live with [her]."

In addition, the Housing Authority contends that it complied with subsection (e)(2), as it adhered to the regulation's hearing officer and evidence requirements, and it informed Ramirez that she had a right to examine and copy documents relevant to the hearing. Furthermore, the hearing officer's decision complied with subsection (e)(6), asserts the Housing Authority, as it (1) is based on a preponderance of the evidence; (2) is in writing; and (3) briefly states the reason for the decision: "Dwelling unit is not used solely by the residents of the Ramirez family." The Housing Authority disagrees with the district court's determination that reason given for the decision is conclusional.

Ramirez's response to the Housing Authority's compliance arguments reveals the true nature of her § 1983 claim. She states:

> The [Housing Authority] misunderstands [Ramirez's] claims and the decision of the court below, both of which are supported by precedent in this and other courts. Although the provisions of 24 C.F.R. § 982.555 are promulgated to comply with due process, the due process to which [Ramirez], a Section 8 voucher recipient, is entitled is not satisfied merely by promulgation of said regulations. For "[t]he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation"[22] . . . . Contrary to

---

[22]Caulder v. Durham Hous. Auth., 433 F.2d 998, 1004 n.3 (4th Cir. 1970) (quoting Cafeteria & Restaurant Workers Union, Local 473 v. McElroy, 367 U.S. 886 (1961)), cert. denied, 401 U.S. 1003, 91

11

> [the Housing Authority's] contention, the
> essence of due process is such that the mere
> existence of and adherence to the words of the
> regulations at 24 C.F.R. § 982.555, which
> themselves may encompass the minimal
> requirements of Goldberg, cannot satisfy due
> process in every context.

Ramirez's argument makes clear that she is actually relying on the due process protections of the Fourteenth Amendment in bringing her § 1983 claim, rather than on federal rights embodied in HUD regulations. We are satisfied that the Housing Authority complied with subsections (c)(2) and (e)(6) in terminating Ramirez's benefits.

Even if we were we to accept the constitutional gloss applied by the district court in its compliance analysis, however, we would remain convinced that Ramirez's federal rights have not been violated; under the circumstances of this case, she has not been deprived of her right to procedural due process.[23] Ramirez claims that the notice of decision terminating her benefits is constitutionally infirm inasmuch as it fails to state the period of time over which the alleged violation occurred, identify the number and identity of the alleged violators, or provide the source of the evidence on which the decision was based. Although such additional information might have provided Ramirez with a better preview of what to expect at the informal hearing, we conclude that the

---

S. Ct. 1228, 28 L. Ed. 2d 539 (1971).

[23]The protections necessary to satisfy the Due Process Clause vary depending on the time, place, and circumstances of the deprivation. Mathews v. Eldridge, 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976).

12

explanation she was given provided notice adequate for her to prepare a meaningful defense: Perfection is not required. We likewise conclude that the reason stated by Ramirez's hearing officer in affirming the termination decision was sufficient to pass muster under the Due Process Clause.

III

CONCLUSION

For the foregoing reasons, the opinion of the district court is reversed and a take nothing judgment is rendered, dismissing Ramirez's claims.

REVERSED and RENDERED.